# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | 8:11CR163 |
| Plaintiff,   ) | |
| ) | ORDER and |
| vs.   ) | |
| ) | FINDINGS AND |
| YURIDIA CRISANTO-ANGELITO,   ) | |
| ) | RECOMMENDATION |
| Defendant.   ) | |

This matter is before the court on the Motion to Suppress (Filing No. 23) and Motion to Dismiss Indictment or in the Alternative to Strike Superfluous Language and for a Bill of Particulars (Filing No. 25) filed by defendant Yuridia Crisanto-Angelito (Crisanto-Angelito). Crisanto-Angelito is charged in the Indictment with using false identification documents, i.e., a Nebraska State Identification Card and a Social Security number (Count I), in violation of 18 U.S.C. § 1546(b)(1); false representation of a Social Security number with intent to deceive (Count II), in violation of 42 U.S.C. 408(a)(7)(B); and false representation of U.S. citizenship (Count III), in violation of 18 U.S.C. § 911.  Crisanto-Angelito seeks to suppress any evidence derived from her arrest on May 3, 2011, at Nebraska Beef Company in Omaha, Nebraska, by agents of the U.S. Department of Homeland Security Investigations (HSI).

An evidentiary hearing was held on Crisanto-Angelito's motions on August 2, 2011. Crisanto-Angelito was present for the hearing along with her counsel, Bassel F. El-Kasaby. The United States was represented by Assistant U.S. Attorney Michael D. Wellman. Laura Garcia-Hein, a certified Spanish language interpreter, served as interpreter for the hearing. During the hearing, the court heard the testimony of HSI Senior Special Agent David Sullivan (Agent Sullivan).  The court received into evidence the following exhibits: Exhibit 1 - Index of Evidence; and Exhibit 2 - Prosecution Report.  The court also took judicial notice of Filing No. 28 - Notice of Compliance and Filing No. 31 - Index of Evidence (restricted).  A transcript (TR.) of the hearing was filed on August 8, 2011 (Filing No. 40).

## FINDINGS OF FACT

On May 3, 2011, Agent Sullivan and approximately six other agents of HSI went to Nebraska Beef Company (Nebraska Beef) in Omaha, Nebraska (TR. 13-16). The agents went to Nebraska Beef as a result of an I-9 inspection wherein HSI had identified fourteen individuals using Social Security numbers which were the subject of identity theft complaints to the Federal Trade Commission (TR. 15). As Agent Sullivan testified: "So we went with the intentions of interviewing these folks and trying to figure out if they were, in fact, the real person or what exactly was going on" (TR. 15). Agent Sullivan had participated in previous such inspections and found someone who was not working illegally (TR. 15). The agents arrived around 9:00 a.m. and were dressed in plain clothes with no weapons displayed (TR. 16-17). Previously, HSI furnished Nebraska Beef with the fourteen individual names and requested Nebraska Beef to have the individuals assemble in a room (TR. 33). Only twelve of the fourteen individuals were at work on May 3, 2011, and were assembled in a small training room next to the men's locker room (TR. 16). Agent Buckley, the case agent, had a stack of files, and as the other agents walked into the room, each agent was handed separate files (TR. 17). Agent Sullivan was handed the file of Davina Herrera (TR. 17). Agent Sullivan called out the name of Davina Herrera and Crisanto-Angelito waived her hand (TR. 18).

It was crowded in the room, and Agent asked Crisanto-Angelito to come with him to an adjoining locker room (TR. 18-19). Several other agents were also using the locker room for their interviews (TR. 19). Agent Sullivan identified himself to Crisanto-Angelito and asked her for her real name (TR. 19). Agent Sullivan spoke to Crisanto-Angelito in Spanish (TR. 19). Crisanto-Angelito said her name was Yuridia Crisanto-Angelito (TR. 20). Agent Sullivan asked where she was born (TR. 20). Crisanto-Angelito said she was born in Mexico (TR. 20). Agent Sullivan asked Crisanto-Angelito whether she had legal authorization to live and/or work in the United States (TR. 20). Crisanto-Angelito stated she did not (TR. 20). Agent Sullivan did not ask Crisanto-Angelito any more questions at the time and intended to detain her and transport her to the HSI detention center for processing (TR. 20-21). Crisanto-Angelito was handcuffed before she left the locker room for transportation to the HSI detention center (TR. 21). In this type of investigation, the

subjects invariably have personal property in their lockers, which they want to take with them (TR. 21-22). As Agent Sullivan was conversing with another agent about the property, he observed a Nebraska Beef employee with a garbage bag containing the property of all twelve subjects (TR. 22). All twelve subjects were arrested that day and transported to the HSI detention center near the airport (TR. 22).

Agent Sullivan again met with Crisanto-Angelito at the HSI detention center (TR. 22). Agent Sullivan fingerprinted and photographed Crisanto-Angelito and asked her if she needed to call anyone for handling any children (TR. 22-23). The property from the garbage bag was piled on a nearby counter, and Agent Sullivan asked Crisanto-Angelito if any of the property belonged to her (TR. 23). Crisanto-Angelito pointed to a purse (TR. 23). Agent Sullivan searched the purse to make sure there were no weapons and to separate out any items that would not be accepted at Douglas County Corrections where Crisanto-Angelito would be detained (TR. 23). Inside, Agent Sullivan found a Mexican matricula (identification) card and a Mexican driver's license in Crisanto-Angelito's name (TR. 25). There were also three pay stubs and a prescription card from Nebraska Beef, and an insurance card all in the name of Davina Herrera (TR. 25-26).

Following Crisanto-Angelito's indictment, the prosecution provided Crisanto-Angelito's counsel with a thirty-three page prosecution report (TR. 27; Exhibit 2; Filing No. 31) and the backside of the I-9 form for Davina Herrera (TR. 30; Exhibit 1; Filing No. 31).

## LEGAL ANALYSIS

### A. Motion to Suppress

Crisanto-Angelito asserts she was in custody and interrogated without having been advised of her ***Miranda***[1] rights when she first appeared in the Nebraska Beef training room, and any information obtained thereafter, either at the plant or later at the detention center, should be suppressed under the exclusionary rule of ***Wong Sun v. United States*, 371 U.S. 471 (1963)**.

---

[1] ***Miranda v. Arizona*, 384 U.S. 436 (1966)**.

In the morning hours of May 3, 2011, Crisanto-Angelito was not in custody at the time Nebraska Beef management asked numerous employees to come to the conference room. Crisanto-Angelito's first meeting face-to-face with Agent Sullivan was when the name Davina Herrera was called out and she waived her hand. She was not in custody when Agent Sullivan identified himself and asked her name and country of origin. Requests for such basic identification or biographical information is not interrogation requiring *Miranda* advice. *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1039 (8th Cir. 2010); *United States v. Carillo-Velasquez,* 2010 WL 4048242, at *2 (D. Neb. Oct. 14, 2010); *United States v. Garcia-Aguilar*, 2010 WL 3636274, at *6 (D. Neb. Aug. 12, 2010). Here, Crisanto-Angelito was not detained until Agent Sullivan believed Crisanto-Angelito was in the United States illegally. Agent Sullivan had a reasonable basis to detain Crisanto-Angelito as a person illegally in the United States based upon her responses to his questions.

Once Crisanto-Angelito was detained and transported to the Omaha HSI detention center, she was booked for administrative processing when certain identifying information was obtained including fingerprints (TR. 26). Again, *Miranda* warnings are not required for routine booking questions and the gathering of biographical information and identifying her property. *United States v. Reyes*, 908 F.2d 281 (8th Cir. 1990). Crisanto-Angelito's motion to suppress should be denied.

### B. Motion to Dismiss

Crisanto-Angelio seeks to dismiss all three counts in the Indictment because they are vague, duplicitous and superfluous (Filing No. 25). Alternately, she asks that superfluous language in Counts I and II be stricken and requests an order for a Bill of Particulars.

The Indictment charges as follows:

> COUNT I
> On or about the 11th day of August, 2009, in the District of Nebraska, YURIDIA CRISANTO-ANGELITO, for the, purpose of satisfying a requirement of section 274A(b) of the Immigration and Nationality Act, used a Nebraska State

4

>  Identification Card numbered H13105260, and a Social Security Card numbered XXX-XX-8014 knowing and having reason to know that each document was not issued lawfully for her use.
>
>  In violation of Title 18, United States Code, Section 1546(b)(1).
>
>  COUNT II
>  On or about the 11th day of August, 2009, in the District of Nebraska, YURIDIA CRISANTO-ANGELITO, for the purpose of obtaining anything of value from any person, and for any other purpose, with intent to deceive, falsely represented a number to be the social security account number assigned by the Commissioner of Social Security to her, when in fact such number, ending in XXX-XX-8014, is not the social security account number assigned by the Commissioner of Social Security to her.
>
>  In violation of Title 42 United States Code, Section 408(a)(7)(B).
>
>  COUNT III
>  On or about the 11th day of August, 2009, in the District of Nebraska. YURIDIA CRISANTO-ANGELITO, falsely and wilfully represented herself to be a citizen of the United States.
>
>  In violation of Title 18, United States Code, Section 911.

**See** Filing No. 1 - Indictment. Crisanto-Angelito asserts Counts I and II are facially defective in that they do not allege every element of the offense (Defendant's Brief, Filing No. 26 - p. 1). Crisanto-Angelito further asserts that the allegation regarding the Nebraska State Identification Card is superfluous. Finally, Crisanto-Angelito asserts Count III is defective for failure to specify the conduct sought to be punished with any specificity.

As the Supreme Court held in *United States v. Hamling*, 418 U.S. 87 (1974), "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117; **see also** *United States v. Debrow*, 346 U.S. 374, 376 (1953); *United States v. Young*, 618 F.2d 1281, 1286 (1980). The court finds, as pointed out by the government, all three counts track the language of the statutes involved. Further, the

Indictment is structured so as to enable Crisanto-Angelito to plead an acquittal or conviction in any future prosecution. Crisanto-Angelito's motion to dismiss the Indictment as failing to state offenses is without merit.

Crisanto-Angelito's assertion that inclusion of the Nebraska State Identification Card (ID card) is superfluous is without merit as Crisanto-Angelito apparently offered the ID card as one form of identification when completing her I-9 form at her place of employment, Nebraska Beef. Such ID card is an authorized form of identification under 8 U.S.C. § 1324a(b)(1)(D)(i). Crisanto-Angelito's request to strike the allegation as to the ID card as superfluous is without merit.

The government provided Crisanto-Angelito with a copy of the prosecution report (Exhibits 1 and 2 - Filing No. 31). Crisanto-Angelito still seeks a bill of particulars. The fundamental purpose of a bill of particulars is to inform the defendant of the nature of the charges against her, to prevent or minimize the element of surprise at trial, and to enable her to plead her acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite. *United States v. Bowie*, 618 F.3d 802, 817 (8th Cir. 2010); *United States v. Hernandez*, 299 F.3d 984, 989-90 (8th Cir. 2002). A bill of particulars, however, is not a tool for discovery. *United States v. Shepard*, 462 F.3d 847, 860 (8th Cir. 2006). It is not to be utilized to provide itemized disclosure of the government's evidence at trial. *Livingstone*, 576 F.3d at 884; *United States v. Wessels*, 12 F.3d 746, 751 (8th Cir. 1993); **see also** *United States v. Matlock*, 675 F.2d 981, 986 (8th Cir. 1982) ("Acquisition of evidentiary detail is not the function of the bill of particulars.").

In *United States v. Guerrerio*, 670 F. Supp. 1215 (S.D.N.Y. 1987), the court denied the defendants' petition for a bill of particulars stating "[t]he test is not whether the particulars sought would be *useful* to the defense. Rather, a more appropriate inquiry is whether the information in question is *necessary* to the defense." *Guerrerio*, 670 F. Supp. at 1224. Further, the court noted the "government is not obliged to disclose the precise manner in which the crimes alleged in the indictment were committed." *Id*. at 1225. Additionally, in *United States v. Cole*, 707 F. Supp. 999 (N.D. Ill. 1989), the court, in

denying defendant's motion for a bill of particulars in a prosecution for a drug distribution conspiracy, explained:

> In evaluating the need for a Bill of Particulars, the court must determine whether the indictment adequately sets forth the elements of the offense charged and sufficiently appraises the defendant of the charges to enable him to prepare for trial. Even if the indictment itself does not contain enough information to permit a defendant to prepare his defense, the government may obviate the need for a Bill of Particulars by disclosing additional details about the charges during discovery.

*Cole*, 707 F. Supp. at 1001. Further, other courts, when considering a defendant's request for a bill of particulars, have denied such a request where substantial discovery materials have been provided. **See** *United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990); *United States v. Savides*, 661 F. Supp. 1024, 1028 (N.D. Ill. 1987), **aff'd sub nom.** *United States v. Pace*, 898 F.2d 1218 (7th Cir. 1990); *United States v. Diaz*, 675 F. Supp. 1382, 1390 (E.D.N.Y. 1987), **aff'd**, 878 F.2d 608 (2d Cir. 1989); *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), **modified on other grounds**, 801 F.2d 378 (11th Cir. 1986). "A bill of particulars is not required when information needed for a defendant to prepare for trial can be obtained through some other satisfactory form, such as where the government has an open-file policy or has otherwise disclosed the information to the defendant." *United States v. Norman*, No. 4:10CR59, 2011 WL 2678821, at *2 (E.D. Ark. June 30, 2011) (slip copy). Thus a bill of particulars should not issue where the specifics requested by the defendant are readily available elsewhere. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

In this case, the government has provided Crisanto-Angelito with a copy of the prosecution report. **See** *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991); *United States v. Stephenson*, 924 F.2d 753, 761-62 (8th Cir. 1991). Crisanto-Angelito is seeking evidentiary materials from the government. Such is not the function of a bill of particulars. *Matlock*, 675 F.2d at 986.

Upon a review of the Indictment and of the representations made by the parties regarding the extent of discovery made available in this matter, the court finds a bill of particulars as sought by Crisanto-Angelito is not warranted in this matter.

**IT IS ORDERED:**

1. Crisanto-Angelito's motion to strike surplusage as part of Filing No. 25 is denied; and

2. Crisanto-Angelito's motion for a bill of particulars as part of Filing No. 25 is denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

1. Crisanto-Angelito's motion to suppress (Filing No. 23) be denied; and

2. Crisanto-Angelito's motion to dismiss (Filing No. 25) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Order and Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order and Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 26th day of August, 2011.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge